IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,                    3:17-cr-00448-BR

          Plaintiff,                         OPINION AND ORDER


v.

STEVEN WAYNE NEWMAN,

          Defendant.

**SCOTT ASPHAUG**
Acting United States Attorney
**GARY Y. SUSSMAN**
1000 S.W. Third Avenue
Suite 600
Portland, Oregon 97204-2902
(503) 727-1000

          Attorneys for Plaintiff

**LISA HAY**
Federal Public Defender
**RYAN COSTELLO**
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204
(503) 326-2123

          Attorneys for Defendant

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Steven Wayne Newman's Motion (#58) to Reduce Sentence Pursuant to 18 U.S.C. § 3583(c)(1)(A)(i)(Compassionate Release). The Court concludes the record is sufficiently developed, and, therefore, oral argument would not be helpful to resolve this Motion. For the reasons that follow, the Court **DENIES** Defendant's Motion.


## BACKGROUND

On December 13, 2017, Defendant was charged in an Indictment with one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

The government describes the criminal conduct underlying the Indictment as follows:

> In 2016, investigators from four separate federal and local law enforcement agencies downloaded child pornography via a peer-to-peer file sharing network from a computer later traced back to defendant. An FBI task force agent downloaded ten files from defendant's computer, four of which contained child pornography, including depictions of prepubescent children engaging in sexually explicit conduct with adults and with each other. A Linn County Sheriff's detective downloaded 91 videos and 426 images of child pornography, including images involving bondage, bestiality, and other sadistic activities. Investigators from the Albany Police Department and the Benton County Sheriff's Office also downloaded child pornography from defendant.

On January 10, 2017, FBI agents executed a search warrant at defendant's residence. They seized a Dell laptop computer and a Seagate external hard drive, both of which contained child pornography. Agents found 212 videos and 665 images of child pornography on the two devices. BitTorrent file sharing software installed on the laptop had been run 272 times, most recently on the day before agents executed the warrant.

Gov't Resp. to Def.'s Mot. to Reduce Sentence at 1-2.

On September 18, 2018, Defendant pled guilty pursuant to a Plea Agreement to the count of Distribution of Child Pornography.

On January 15, 2019, the Court sentenced Defendant to a 60-month term of imprisonment and five years of supervised release.

On February 25, 2021, Defendant filed a Motion (#58) to Reduce Sentence Pursuant to 18 U.S.C. § 3583(c)(1)(A)(i) (Compassionate Release).

The Court took Defendant's Motion under advisement on May 19, 2021.

## DISCUSSION

Defendant is currently housed at FCI Englewood and has a projected release date of April 18, 2023. Defendant moves for an order reducing his sentence to time served on the grounds that he suffers from serious medical conditions and that he will not be a danger to the community.

## I.    FSA Compassionate-Release Standards

"'[A] judgment of conviction that includes [a sentence of

imprisonment] constitutes a final judgment' and may not be

modified by a district court except in limited circumstances."

*Dillon v. United States*, 560 U.S. 817, 824-25 (2010)(quoting 18

U.S.C. § 3582(b)).  Compassionate release is an exception in

extraordinary cases.

"For over thirty years, under the original statute, only the

BOP Director could file a § 3582(c)(1)(A) motion for a sentence

reduction on a defendant's behalf.  However, as part of the First

Step Act of 2018, [FSA] Congress amended § 3582(c)(1)(A) to allow

a defendant to seek a reduction directly from the court."  *United*

*States v. Aruda*, 993 F.3d 797, 799 (2021).  Specifically, the FSA

amended 18 U.S.C. § 3582(c)(1)(A) to provide:

> [T]he court . . . *upon motion of the defendant*
> after the defendant has fully exhausted all
> administrative [remedies] or the lapse of 30 days
> from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier
> may reduce the term of imprisonment . . . after
> considering the factors set forth in section
> 3553(a) to the extent that they are applicable, if
> it finds that–
>
> (i) extraordinary and compelling reasons
> warrant such a reduction
>
> * * *
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

FSA, 132 Stat. 5194, Pub. L. No. 115-391 (2018)(emphasis added).

Congress, however, did not provide any "statutory definition of

'extraordinary and compelling reasons.'  Instead, Congress stated

. . . the Sentencing Commission, 'in promulgating general policy

statements regarding the sentencing modification provisions in

section 3582(c)(1)(A) of title 18, shall describe what should be

considered extraordinary and compelling reasons for sentence

reduction.'" *Aruda*, 993 F.3d at 800.

Application Note 1 to United States Sentencing Guidelines

(U.S.S.G.) § 1B1.13 sets out the Sentencing Commission's

policy statement regarding "[r]eduction[s] in [t]erm[s] of

[i]mprisonment Under 18 U.S.C. § 3582(c)(1)(A)" as follows:

> 1. Extraordinary and Compelling Reasons.-
>    . . . extraordinary and compelling reasons
>    exist under any of the circumstances set
>    forth below:
>
> (A) Medical Condition of the Defendant.--
>
>        * * *
>
>   (ii) The defendant is--
>
>     (I) suffering from a serious
>     physical or medical condition,
>
>        * * *
>
> that substantially diminishes the ability of
> the defendant to provide self-care within the
> environment of a correctional facility and
> from which he . . . is not expected to
> recover.

That policy statement also requires the court to consider whether

the defendant is "a danger to the safety of any other person or

to the community, as provided in 18 U.S.C. § 3142(g)" when a

defendant satisfies the requirements of § 1B1.13(1).  U.S.S.G.

§ 1B1.13(2).  The Sentencing Commission, however, "has not

updated § 1B1.13 since the [FSA] amended § 3582(c)(1)(A).  The

current version of § 1B1.13 refers only to motions filed by the

BOP Director, and does not reference motions filed by a defendant

as now allowed under § 3582(c)(1)(A)."  *Aruda*, 993 F.3d at 800.

        After the FSA amended § 3582(c)(1)(A) district courts across

the country were split on whether § 1B1.13(1) was an "applicable

policy statement[] issued by the Sentencing Commission" as to

motions for compassionate release filed by defendants rather than

by the BOP.  The Ninth Circuit addressed this split in *Aruda*:

> (1) the text of § 3582(c)(1)(A) . . . only
> requires courts to consider "applicable" policy
> statements by the Sentencing Commission; (2) the
> text of U.S.S.G. § 1B1.13, . . . begins "[u]pon
> motion of the Director of the Bureau of Prisons";
> (3) the text of Application Note 4 to § 1B1.13,
> . . . states . . . "[a] reduction under this
> policy statement may be granted only upon motion
> by the Director of the Bureau of Prisons pursuant
> to 18 U.S.C. § 3582(c)(1)(A)"; (4) the text of
> Application Note 1(D) to § 1B1.13, . . . is a
> catch-all provision allowing only the "Director of
> the Bureau of Prisons" to determine "other"
> extraordinary and compelling reasons; and (5) the
> legislative history of the First Step Act's
> compassionate-release amendment . . . sought to
> expand and expedite compassionate-release motions
> because they had seldom been brought by the BOP.

*Aruda*, 993 F.3d at 801 (citations omitted).  Ultimately the Ninth

Circuit concluded "the Sentencing Commission has not yet issued a

policy statement applicable to § 3582(c)(1)(A) motions filed by a

defendant," and, therefore, "the current version of U.S.S.G.

§ 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C.

§ 3582(c)(1)(A) motions filed by a defendant."  *Id*. at 802.  The

Ninth Circuit, however, concluded the "Sentencing Commission's

statements in U.S.S.G. § 1B1.13 may inform a district court's

discretion for § 3582(c)(1)(A) motions filed by a defendant, but

they are not binding."  *Id*. (citing *United States v. Gunn*, 980

F.3d 1178, 1180 (7th Cir. 2020)).  Pursuant to *Aruda* this Court

concludes the policy statement in U.S.S.G. § 1B1.13 is merely

advisory rather than mandatory in the context of motions for

compassionate release brought pursuant to § 3582(c)(1)(A) by

defendants rather than by the BOP.  This Court, therefore, will

only consider the criteria set out in § 1B1.13 as advisory when

evaluating Defendant's Motion for Compassionate Release.

**II. The Court's Authority to Modify Defendant's Sentence**

As noted, "'[a] judgment of conviction that includes [a

sentence of imprisonment] constitutes a final judgment' and may

not be modified by a district court except in limited

circumstances."  *Dillon*, 560 U.S. at 824-25 (quoting 18 U.S.C.

§ 3582(b)).  *See also United States v. Penna*, 319 F.3d 509, 511

(9th Cir. 2003)(courts generally may not correct or modify a

prison sentence after it has been imposed unless expressly

permitted by statute or by Federal Rule of Criminal Procedure

35).  As also noted, the FSA provides a limited exception for

courts to modify a final judgment of conviction "upon motion of

. . . the defendant after the defendant has fully exhausted all

administrative [remedies]."  18 U.S.C. § 3582(c)(1)(A).

The parties agree Defendant has exhausted his administrative remedies:  On July 27, 2020, Defendant submitted a request for compassionate release to the Warden of FCI Englewood, and on July 29, 2020, the Warden denied Defendant's request.

The Court also concludes on this record that it has the authority to decide Defendant's Motion pursuant to the FSA.

## III. Defendant's Medical Condition

Defendant asserts he has serious medical conditions within the meaning of U.S.S.G. § 1B1.13(1)(A).

As noted, an extraordinary or compelling reason for compassionate release exists when a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Application Note to U.S.S.G. § 1B1.13(1)(A).

Defendant notes there have been confirmed cases of COVID-19 at FCI Englewood.  Defendant asserts he falls into the category of inmates who are at a heightened risk of serious illness from COVID-19 because he is 53 years old and has "an enlarged prostrate [*sic*] with lower urinary tract symptoms, mixed hyper-lipidemia, and chronic rightsided lower back pain with right-sided sciatica and degenerative lumbar disc disease."

Def.'s Mot. at 2.  In addition, Defendant notes he contracted

COVID-19 in December 2020, and as of January 10, 2021, he

continues to experience shortness of breath and fatigue.

The government does not dispute there have been confirmed

cases of COVID-19 at FCI Englewood in the past, but there were

not any confirmed cases of COVID among inmates as of June 21,

2021.  *See* https://www.bop.gov/coronavirus/.  The government also

notes Defendant does not allege and the record does not reflect

he suffers from any condition identified by the Centers for

Disease Control (CDC) that creates an increased risk of severe

illness from COVID-19.  *See* People with Certain Medical

Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/people-with-medical-conditions.html (last

visited June 21, 2021).  In addition, the government points out

Defendant has already had and recovered from COVID-19, and

Defendant's prison medical record reflects he was discharged from

COVID-19 isolation on December 13, 2020, at which time he was

symptom free and had an oxygen-saturation rate of 100%.  Gov't

Resp., Ex. B at 8.  The government, therefore, asserts

Defendant's health conditions do not satisfy the extraordinary

and compelling standard for compassionate release.

The government also notes Defendant was offered the Moderna

COVID-19 vaccine on March 24, 2021, but he refused it.  The Ninth

Circuit has not addressed whether an individual who has been

offered and refused a CVOID-19 vaccination can satisfy the

extraordinary and compelling standard. Judges in this

District as well as other district courts in the Ninth

Circuit, however, have declined to grant requests for

compassionate release to individuals who have refused COVID-19

vaccines. *See, e.g.*, *United States v. Barraza-Macias*,

No. 3:12-CR-00392-MO-4, 2021 WL 2000241, at *1 (D. Or. May 19,

2021)("Mr. Barraza-Macias's argument in favor of release is

significantly undercut by the fact that he was offered and

refused a vaccine that has so far proven to be highly effective

at preventing severe illness and death.")(citing When You've Been

Fully Vaccinated, CDC, https://www.cdc.gov/coronavirus/2019-ncov/

vaccines/fully-vaccinated.html)); *United States v. Olmstead*,

No. 6:17-CR-00101-AA, 2021 WL 1854647, at *2 (D. Or. May 10,

2021)(denying the defendant's motion for compassionate release

noting "there are no documented cases of COVID-19 at FCI Herlong

and . . . Olmstead was offered the vaccine but he declined to

take it."); *United States v. Richmond*, No. 1:14-CR-00171-NONE,

2021 WL 2337626, at *6 (E.D. Cal. June 8, 2021)("In cases [when]

an inmate cites the risk of contracting COVID-19 as a basis for

relief but refuses to receive a vaccine, courts across the

country have nearly uniformly denied compassionate release

because such refusal undercuts [an inmate's] fear of

infection.")(citations omitted)); *United States v. Cao*,

No. 3:18-CR-00059-SLG, 2021 WL 1792056, at *1 (D. Alaska May 5,

2021)(denying the defendant's request for compassionate release

noting "the medical records do not support Mr. Cao's assertion as

to the severity of his medical condition," and he "was offered,

and refused, the COVID-19 vaccine."); *United States v. Del*

*Rosario Martinez*, No. 19CR5218-MMA, 2021 WL 956158, at *3 (S.D.

Cal. Mar. 10, 2021)(denying the defendant's motion for

compassionate release noting "Defendant's vaccination

significantly mitigates the risk that [s]he will contract

COVID-19, much less become seriously ill.")(quotations omitted));

*United States v. Baeza-Vargas*, No. CR1000448010PHXJAT, 2021 WL

1250349, at *3 (D. Ariz. Apr. 5, 2021)("Judges of this Court, as

well as others around the country, have ruled with consistency

that an inmate's denial of a COVID-19 vaccination weighs against

a finding of extraordinary and compelling circumstances.")

(collecting cases)).  The Court finds the reasoning of these

cases is persuasive.

In addition, as noted, Defendant contracted COVID-19 and had

lingering effects in January 2021.  It is unclear, however,

whether contracting COVID-19 in combination with the possible

risk of reinfection is sufficient to establish that extraordinary

and compelling reasons exist to justify compassionate release.

The Ninth Circuit has not addressed this issue, and district

courts within the Ninth Circuit are split on the question.  Some

courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *United States v. Yellin,* No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons existed when a COVID-positive inmate, who did not develop severe symptoms, suffered from a combination of medical conditions that placed him at risk of serious complications from COVID-19). *See also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020)("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of reinfection, given the high numbers of infected inmates and Defendant's own contraction of the virus."). Other courts, however, have taken the position that uncertainty surrounding the danger of reinfection "cuts against compassionate release" in part because it is the defendant's burden to establish that extraordinary and compelling reasons exist to justify compassionate release. *See, e.g., United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020); *United States v. Ieremia,*

No. 16-CR-00744-DKW-1, 2021 WL 67313, at *3-*4 (D. Haw. Jan. 7,
2021)("[The defendant] has already contracted and recovered from
COVID-19.  While the Court recognizes that some reinfections are
expected, the CDC explains that reinfections remain rare.  In
short, the Court agrees with the Government:  While no one is
claiming that it is impossible to contract COVID-19 a second time
— there are a few known examples around the globe — the evidence
currently available indicates that it is at least unlikely.  A
rare chance of contracting a virus once recovered from . . . does
not meet the bar for an extraordinary and compelling reason
warranting release.")(quotations omitted)); *United States v.*
*Rios-Ayon*, No. 1:16-CR-00096-NONE, 2020 WL 7646408, at *6 (E.D.
Cal. Dec. 23, 2020)("More fundamentally, aside from citing the
risk of reinfection from COVID-19 (which is speculative), nothing
in the record before this court supports a contention that
defendant is actually hindered in providing 'self-care' at FCI
Victorville.").

    The Court notes the CDC has found "[c]ases of reinfection
with COVID-19 have been reported, but remain rare."  Https://www.
cdc.gov/coronavirus/019-cov/ your-health/reinfection.html.  This
Court has already found the reasoning of *Ieremia* to be persuasive
and adopted it in *United States v. Williams*, 3:10-cr-00440-BR,
Opinion and Order (#41) at 13 (Mar. 9, 2021)("The Court,
therefore, concludes a "rare chance of contracting a virus once

recovered from . . . does not meet the bar for an extraordinary and compelling reason warranting release.").

Here Defendant is not in the age group that is considered to be at increased risk of severe illness from COVID-19. In addition, the Court finds persuasive the reasoning in the above cases regarding individuals who contracted and recovered from COVID-19 and/or who have refused a COVID-19 vaccination. Accordingly, on this record the Court concludes Defendant has not established an extraordinary or compelling reason for compassionate release exists in this case. The Court, therefore, **DENIES** Defendant's Motion to Reduce Sentence.

Because the Court has concluded Defendant has not established he suffers from a sufficiently serious medical condition, the Court does not address whether Defendant would be a danger to the community if he were released.


## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#58) to Reduce Sentence Pursuant to 18 U.S.C. § 3583(c)(1)(A)(i) (Compassionate Release).

IT IS SO ORDERED.

DATED this 24th day of June, 2021.

> s/ Anna J. Brown
> ANNA J. BROWN
> United States Senior District Judge